**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ROBERT C. PHILLIPS,<br><br>        Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of<br>Social Security Administration,<br><br>        Defendant. | 3:16-cv-00226-LRH-WGC<br><br>**REPORT & RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE** |

       This Report and Recommendation is made to the Honorable Larry R. Hicks, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

       Before the court is Plaintiff's Motion for Summary Judgment. (ECF No. 17.) The Commissioner filed a Cross-Motion to Affirm and Opposition to Plaintiff's motion. (ECF No. 18.)

       After a thorough review, the court recommends that Plaintiff's motion be denied, and that the Commissioner's cross-motion to affirm the Social Security Administration's final decision be granted.

**I. BACKGROUND**

       On October 16, 2013, Plaintiff completed an application for disability insurance benefits (DIB) under Title II of the Social Security Act, alleging disability beginning June 15, 2007. (Administrative Record (AR) 180-183.) The application was denied initially and on reconsideration. (AR 81-84, 88-92.)

       Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 94-95.) ALJ Ryan Johannes held a hearing on July 8, 2015. (AR 35-63.) Plaintiff, who was represented by counsel, appeared and testified on his own behalf at the hearing. Testimony was also taken from a vocational expert (VE). On September 18, 2015, the ALJ issued a decision finding Plaintiff not disabled. (AR 20-

29.) Plaintiff requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision of the Commissioner. (AR 1-6, 16-17.)

Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). Plaintiff argues: (1) the ALJ failed to address medical evidence of Plaintiff's limitations resulting from medication side effects; (2) the ALJ failed to address or consider all of Plaintiff's alleged impairments, including insomnia and sleep apnea; and (3) the ALJ did not properly evaluate the U.S. Department of Veterans' Affairs (VA) disability rating that Plaintiff is 100 percent disabled. (ECF No. 17.)

## II. STANDARD OF REVIEW

**A. Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 522 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez*, 740 F.3d at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id.* (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the

ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

**B. Five-Step Evaluation of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(b).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the impairment meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (c). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration,

the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last fifteen years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(b)(1).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 1545 and § 416.945. In determining RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. 20 C.F.R. § 404.1545(a) and § 416.945(a)(3).

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f) and § 416.920(f); see also Berry, 62 F.3d at 131 ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.").

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform work available in the national economy. 20 C.F.R. § 404.1520(e) and § 416.290(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez*, 740 F.3d at 528. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work

experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

"The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and citation omitted). The Grids place jobs into categories by their physical-exertional requirements, and there are three separate tables, one for each category: sedentary work, light work, and medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels. *Id*. Each grid has various combinations of factors relevant to a claimant's ability to find work, including the claimant's age, education and work experience. *Id*. For each combination of factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in that category. *Id*.

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely, if the Commissioner determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071; *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

### III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one, the ALJ found Plaintiff met the insured status requirements on June 30, 2014, and had not engaged in substantial gainful activity from the alleged onset date of June 15, 2007 through the date last insured of June 30, 2014. (AR 22.)

At step two, the ALJ concluded Plaintiff had the following severe impairments: chronic obstructive pulmonary disease (COPD), degenerative disc disease (DDD), and hearing loss. (AR 23.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 24-25.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b). (AR 25.) Specifically, the ALJ found Plaintiff was limited as follows: he could lift/carry ten pounds frequently and twenty pounds occasionally; he could sit for six hours of an eight-hour workday; he could stand and/or walk for four hours in an eight-hour work day; he could occasionally climb ramps and stairs, stoop, kneel and crouch; he could never climb ladders, ropes, scaffolds or crawl; he could frequently balance, operate foot controls, reach, handle, finger, push and pull; he should avoid concentrated exposure to extreme cold and heat, humidity, and wetness; he should avoid all exposure to fumes, odors, dusts, gases, poor ventilation, moving mechanical parts, and unprotected heights; he should also require face to face contact needed for communication in an environment where the noise code is four as defined by the "SCO" as loud. (AR 25.)

The ALJ went on to conclude that Plaintiff could perform his past relevant work as a reception interviewer and radiology secretary. (AR 28-29.) As a result, the ALJ found Plaintiff not disabled at any time from the alleged onset date of June 15, 2007, through the date last insured of June 30, 2014. (AR 29.)

**B. Side Effects of Plaintiff's Medications**

**1. Summary of Argument**

Plaintiff argues that the ALJ erred in failing to address or consider evidence regarding side effects caused by Plaintiff's medications. (ECF No. 17 at 8-10.) Specifically, Plaintiff asserts that his chronic pain was treated with a prescribed opiate—hydrocodone—and the record contains evidence that Plaintiff experienced side effects, and ultimately his primary care provider discontinued the prescription due to these side effects. (*Id*. at 8.) Plaintiff contends the ALJ never mentioned these side effects and did not consider functional limitations they caused. (*Id*.)

The Commissioner argues that Plaintiff did not adequately explain what side effects he experienced, how they functionally limited his ability to work, or how they were unavoidable and lasted at least twelve consecutive months. (ECF No. 18 at 4-5.) The Commissioner asserts that passing reference to side effects from medications in a claimant's treatment records do not give rise to an ALJ's duty to develop such evidence. (ECF No. 18 at 5.)

6

**2. Analysis**

Plaintiff asserts that hydrocodone, which he was prescribed for chronic pain, is known to cause side effects including drowsiness, constipation, loss of appetite, anxiety, and abnormal moods in some patients. (ECF No. 17 at 8:7-10.) He then claims: the record contains medical evidence, as well as his own testimony, that he experienced such side effects from his prescribed medication (ECF No. 17 at 8:10-13, citing AR 45, 262, 666, 792, 860, 680, 711, 717, 721-22); his primary care provided later discontinued his hydrocodone due to concerns of its side effects (ECF No. 17. at 8:14-16, citing AR 1031-32); and, the ALJ failed to mention "potential side effects" and failed to consider any functional limitations caused by Plaintiff's medications (ECF No. 17 at 8:17-18).

Plaintiff cites to his own testimony where the ALJ asked him about the problems that prevent him from working. (ECF No. 17 at 8, citing AR 45.) In response to that question, Plaintiff testified:

> Fatigue, which is all COPD-related, lack of oxygen. Over the years, my ability to walk or do basic tasks like mowing the lawn and everything, I can't do that. My weight -- my strength has gone way down. That's all because of my breathing -- oxygen level. I pretty much stay homebound, and I stay in bed most of the time. And then with respect to [INAUDIBLE] disorder and general anxiety disorder, I have a fairly low tolerance for stress now. I tried every medication that's possible for my situation. *I'm on any medication, and the side effects of those medications affect my concentration. They affect my sleeping.* I don't get a full night's quality sleep from both the COPD and the stress, so I wake up fatigued all the time. I can't lift -- I have seven dogs at home. They're all small Chihuahuas, and they're about anywhere from seven to 10 pounds, and I have difficulty lifting one of them, so I can't sit for very long time without having to stand up and get -- the problem with my back, it freezes, and I'm in severe pain from my back, so I have to get up every once in a while to walk around. I just don't have any energy is the biggest thing. I don't have energy to concentrate. I have to focus to do anything.

(AR 45-46 (emphasis added).)

Plaintiff also cites various medical records as evidence that he experienced side effects from his prescribed opiate medication. (ECF No. 17 at 8, citing 262, 666, 680, 711, 717, 721-22, 792, 860.)

On January 9, 2013, he reported poor appetite to his mental health provider. (AR 711.) That same day he reported mood swings, anxiety, irritability, excessive worrying, difficulty concentrating, depressed mood, among other issues. (AR 717.) He also indicated his sleep and appetite were disrupted. (AR 722.)

On July 25, 2013, he reported chronic constipation. (AR 792.) The constipation was attributed to chronic narcotic use, but Plaintiff never testified or otherwise claimed that constipation limited his ability to perform wok activities. (AR 792.)

On September 3, 2013, he described anger he had experienced to his mental health provider. (AR 680.)

On October 3, 2013, it was noted that he was taking hydrocodone which "could" be contributing to his sleep apnea. (AR 666.)

In a disability report form Plaintiff filled out on January 20, 2014, Plaintiff indicated that hydrocodone and duloxetine caused him drowsiness. (AR 262.)

In a VA psychiatry note dated January 31, 2014, it was reported that Plaintiff said "he has tried to take the duloxetine but he thinks it makes him tired when he takes it in the AM." (AR 860.) Then, he reported that "it must be working or [he] would be a lot more depressed with everything." (AR 860.) He was advised that the opiates are most likely the cause. (AR 860.)

Plaintiff claims that his physician eventually discontinued his prescription for hydrocodone due to concerns regarding its side effects. (ECF No. 17 at 8, citing AR 1031-32.) The portion of the record Plaintiff refers to appears to be a letter from Paul T. Watson, MS, FNP, on March 5, 2015, stating that "[n]ew research shows that long term (chronic) use of opiate (narcotic) pain medication may cause multiple safety issues" and "treatment guidelines for opiate pain medications have significantly changed." (AR 1031.) He advised Plaintiff that in most cases he would no longer prescribe opiates for long term chronic pain, and instead would switch to the "most effective non opiate therapy." (AR 1031.) Plaintiff was told that his hydrocodone prescription would be tapered and stopped over the following weeks. (AR 1032.) While the letter stated that long term use of opiates is associated with serious medical concerns, it did not state that Plaintiff was in fact suffering from these concerns or side effects.

There is no objective evidence that any of the symptoms Plaintiff reported above were actually a result of taking prescribed medications. Instead, there are only a few brief statements that hydrocodone could possibly be affecting his sleep.

Plaintiff relies on *Varney v. Secretary of H.H.S.*, 846 F.2d 581, 585 (9th Cir. 1988), modified in 859 F.2d 1396 (9th Cir. 1988) (superseded on other grounds), to support his argument that the ALJ erred

in failing to discuss the side effects of his medications. There, the Ninth Circuit said that "side effects of medications can have a significant impact on an individual's ability to work and should figure into the disability determination process." *Varney*, 846 F.2d at 585 (citation omitted). "[I]f the Secretary chooses to disregard a claimant's testimony as to the subjective limitations of side effects, he must support that decision with specific findings similar to those required for excess pain testimony, *as long as the side effects are in fact associated with the claimant's medication(s)*." *Id*. (citations omitted).

Here, the Plaintiff's testimony is limited to one sentence where he said his medications affected his concentration and sleeping, and various complaints concerning symptoms to his medical providers, none of which are definitively linked with taking certain medications. Therefore, as a preliminary matter, the court finds that the ALJ's duty to set forth findings for disregarded the medication side effects was not triggered under *Varney* because the record does not support Plaintiff's claim that the side effects were in fact associated with his medications.

The court also concludes that even if that duty were triggered, the ALJ satisfied the obligation to reject this testimony when he properly discounted Plaintiff's credibility elsewhere in the record. In *Thomas v. Barnhart*, the claimant, like Plaintiff here, argued that the ALJ improperly excluded side effects (dizziness and difficulty concentrating there) caused by her pain medication, citing her own statements to her doctor and her testimony at the hearing. *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002). The court concluded that the ALJ "properly rejected her testimony by using ordinary techniques of credibility evaluation and providing a specific, clear and convincing reason, supported by the record, that her testimony was generally not credible." *Id*. (citations and quotation marks omitted).

An "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted).

Here, the ALJ set forth various clear and convincing reasons, supported by the record, for discounting Plaintiff's credibility. The ALJ found that the allegations regarding the severity of symptoms and limitations was diminished because the allegations were greater than expected in light of the objective evidence in the record, and went on to discuss that evidence. (AR 25-28.) The ALJ also noted that despite his alleged impairment, Plaintiff engaged in a somewhat normal level of daily activity and

interaction, indicating that he could prepare meals, wash dishes, do laundry, vacuum, pay bills, handle a checking account, spend time on the computer, watch television, feed the dog, take care of his personal needs, eat out occasionally, read, play guitar, journal, garden, and gamble. (AR 26.) Next, the ALJ stated that Plaintiff did not generally receive the type of medical treatment one would expect for a totally disabled individual, as he received routine, conservative and non-emergency treatment. (AR 26.) The ALJ then concluded that Plaintiff's alleged loss of function was not supported by the objective medical findings, and went on to detail those findings. (AR 26-28.) The ALJ also described mental health records indicating that he was well oriented, had no difficulty maintaining attention or concentration, his thought process was logical, his judgment was intact, and memory functioning was adequate. (AR 27.)

Therefore, the court finds that the ALJ properly discredited Plaintiff's credibility and did not err in disregarding the side effects Plaintiff claims were associated with his medications.

**C. Sleep Apnea and Insomnia**

**1. Summary of Argument**

Plaintiff next argues that the ALJ erred in failing to consider or address his medically determinable impairments of sleep apnea and insomnia as severe impairments. (ECF No. 17 at 10-13.) He argues that the ALJ did not provide any reason for finding his sleep impairments non-severe at step two, and failed to discuss or consider limitations posed by these impairments to establish his RFC and make a finding at step four. (*Id*. at 12.)

The Commissioner argues that Plaintiff failed to assert disability based on these alleged impairments. (ECF No. 18 at 7.) In addition, the Commissioner asserts that the only evidence Plaintiff identifies of sleep apnea and insomnia are his own reports. (ECF No. 18 at 7, citing Pl's brief at 10, AR 823 (noting reported history of possible sleep apnea), 1245 (noting Plaintiff's report he had insomnia since the early 1980s)). The Commissioner further contends that Plaintiff does not identify any functional limitations attributed to sleep apnea or insomnia. (ECF No. 18 at 7.)

**2. Analysis**

The ALJ did not mention sleep disturbances in connection with the determination of severe impairments at step two, or in assessing Plaintiff's functional limitations at step four.

/ / /

Insofar as step two is concerned, a social security claimant must have a severe impairment or combination of impairments that significantly limits the physical or mental ability to do basic work activities. *See* 20 C.F.R. § § 404.1520(c), 416,920(c). If the ALJ finds the claimant has an impairment(s) that is severe, the ALJ will proceed to step three. An impairment is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities, which are defined as the abilities and aptitudes to do most jobs, such as: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *See* 20 C.F.R. § § 404.1521, 416.921. The claimant must prove the physical or mental impairment by providing medical evidence consisting of signs, symptoms and laboratory findings; the claimant's own statement of symptoms alone will not suffice. *See* 20 C.F.R. § § 404.1508, 416.908.

"A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its limiting effects on the individual's physical or mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself." SSR 85-28, 1985 WL 56856, at * 4 (1985). "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290) (emphasis original in *Webb*); see also SSR 85-28, 1985 WL 56856, at * 3 (1985). The step two inquiry is "a 'de minimis screening device [used] to dispose of groundless claims,' ... and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb*, 433 F.3d at 687 (quoting *Smolen*, 80 F.3d at 1290).

At step four, in determining RFC (what the claimant can still do despite his or her limitations), the Commissioner must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. 20 C.F.R. § 404.1545(a) and § 416.945(a)(3).

11

Insofar as the Commissioner argues Plaintiff did not allege disability based on these impairments, the Commissioner is correct that the disability report Plaintiff filled out identified CPOD, dysthymic disorder, back pain and major depression. (AR 239.) At the hearing, when Plaintiff was asked why he could not work, he did not specifically mention insomnia or sleep apnea, but briefly stated that his medications affected his sleep. (AR 45-46.) He did briefly testify that he consistently got only two to four hours of sleep a night, and had "sleep problems." (AR 51.)

With respect to step-two, the medical evidence does not support Plaintiff's claim that his alleged sleep disturbances should have been characterized as severe impairments.

Plaintiff cites various portions of the record to support his claim that he suffers from sleep disturbance impairments. (*See* ECF No. 17 at 5, citing AR 383, 466, 493, 498-99, 661, 666, 673, 684-86, 711, 717, 721-22, 774, 786, 860, 882, 1245.) These records do reflect that Plaintiff reported waking up during the night on various occasions, and that his wife noticed him gasping for breath at night. (*See* AR 466 (September 23, 2002), AR 383 (January 30, 2003), AR 786 (April 26, 2005), AR 774 (June 7, 2005), AR 498-99 (November 17, 2008), AR 493 (September 28, 2011), January 9, 2013 (AR 711), AR 684 (August 29, 2013), AR 673 (September 18, 2013), AR 665-66 (October 3, 2013), AR 661-62 (October 15, 2013), AR 860 (January 30, 2014), AR 882 (February 7, 2014)).

He was prescribed Ambien to help him sleep (*see e.g.* AR 493, AR 500), and while it was suspected, he was never actually diagnosed with sleep apnea as he never followed through with the sleep study (AR 666, 686, 819, 860-61). The records indicate Plaintiff excessively consumed caffeine, with notes of his drinking twenty to thirty cups of coffee a day. (*See e.g.* AR 665-66, 860.) Plaintiff was often advised to cut back on the caffeine to achieve quality sleep, but the records do not indicate that he did so. (*Id.*) Moreover, the treatment records do not indicate that the sleep disturbances had any more than a minimal effect on his ability to perform work activities. While he testified that he had "sleep problems," he did not describe how this affected his ability to work. Therefore, the ALJ's failure to characterize his sleep disturbances as severe impairments at step two was not in error.

Insofar as step four is concerned, the court finds again that there is no objective medical evidence or even substantive subjective testimony to support Plaintiff's claim that his sleep disturbances limited his ability to function in a work setting. Therefore, the ALJ did not err in failing to discuss his sleep

disturbances in connection with his RFC at step four.

## D. VA Disability Rating

### 1. Summary of Argument

Plaintiff notes that on March 20, 2012, the VA issued a rating decision finding Plaintiff had a 100 percent service connected disability due to his COPD, and that his dysthymia and anxiety rendered him seventy percent disabled. (ECF No. 17 at 13.) The ALJ found the rating was inconsistent with the objective evidence in the record showing normal mental status examinations, but Plaintiff argues that the ALJ failed to address the 100 percent disability rating for the COPD. (*Id*.) Plaintiff also argues that just stating that the seventy percent disability rating was inconsistent with the objective evidence in the record does not meet the requirement that the ALJ set forth persuasive, specific, valid reasons for rejecting a VA disability rating. (*Id*. at 14.)

The Commissioner asserts that the ALJ discussed the VA ratings, and Plaintiff does not challenge the finding of no severe impairment, or the ALJ's findings concerning his COPD.

### 2. ALJ's Findings

The ALJ stated that he read and considered the VA rating decision based on mental conditions, and found that the rating was inconsistent with the objective evidence in the record which showed normal mental status evaluations. (AR 28.) Therefore, the ALJ assigned the rating little weight. (AR 28.)

### 3. Analysis

In *McCartey v. Massanari*, 298 F.3d 1072 (9th Cir. 2002), the Ninth Circuit addressed, as a matter of first impression, the evidentiary significance of a VA disability rating, and held, like other circuits, "that although a VA rating of disability does not necessarily compel the SSA to reach an identical result, 20 C.F.R. § 404.1504, the ALJ must consider the VA's finding in reaching his decision." *McCartey*, 298 F.3d at 1076. The Ninth Circuit concluded that "an ALJ must ordinarily give great weight to a VA determination of disability." *Id.* Nevertheless, "[b]ecause the VA and SSA criteria for determining disability are not identical ... the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id*. (citation omitted).

In *Valentine v. Commissioner of Social Security Administration*, 574 F.3d 685 (9th Cir. 2009), the 9th Circuit stated that "[i]nsofar as the ALJ distinguished the VA's disability rating on the ground that the VA and SSA disability inquiries are different, her analysis fell afoul of *McCartey*." *Valentine*, 574 F.3d at 695. Despite this error, the Ninth Circuit found that the ALJ did assert a valid reason for giving less weight to the VA's disability rating. The ALJ stated that the VA determination "'was not based on a comprehensive evaluation of the evidence available," which appeared in the same paragraph where the ALJ justified her decision to discredit the opinion of one of the doctors. *Id*. The Ninth Circuit concluded that it was "the ALJ was referring to the fact that the VA rested on an opinion that the ALJ rejected." *Id*. The Ninth Circuit also noted that "the ALJ benefitted from the opinions of the agency psychologists, evidence of Valentine's work history and post-retirement activities, and the input of the vocational expert." *Id*. As such, the court concluded that "[t]he ALJ was justified in rejecting the VA's disability rating on the basis that she had evidence the VA did not, which undermined the evidence the VA did have" and this constituted a persuasive, specific and valid reason supported by the record for according little weight to the VA disability rating. *Id*.

In *Berry v. Astrue*, 622 F.3d 1228 (9th Cir. 2010), the ALJ gave three reasons for discounting the VA's disability rating, one of which was a statement that the SSA is not bound by the VA's determination because the governing rules differ. *Berry*, 622 F.3d at 1236. The Ninth Circuit specifically stated that this "is not a 'persuasive, specific, valid reason[ ]' for discounting the VA determination. *Id*. (citing *Valentine*, 574 F.3d at 695).

Here, the ALJ stated that he "read and considered the [VA disability] Rating Decision based on mental conditions (Exhibits 9F, p. 29; and 14F, p. 60)." (AR 28.) The ALJ assigned the VA rating little weight, stating that it was "inconsistent with the objective evidence in the record which show normal mental status evaluations." (AR 28.)

In *Berry v. Astrue*, the Ninth Circuit found it was not a sufficient reason to note that the SSA is not bound by the VA's determination; however, the Ninth Circuit nevertheless concluded the ALJ did set forth a persuasive, specific and valid reason for discounting the VA's disability rating where the ALJ discussed the VA's determinations regarding the claimant's sleep apnea and back pain as being partially disabling, and then elsewhere in the record reviewed Plaintiff's records related to this condition and

concluded that sleep apnea had improved and was well controlled by treatment, and the pain was also adequately controlled. *Berry*, 622 F.3d at 1236.

Here, the ALJ discussed Plaintiff's asserted mental impairments elsewhere in the decision, including that he had mental status examinations that were consistently within normal limits. (AR 27-28.) Therefore, the court finds the ALJ did set forth persuasive, specific and valid reasons for discounting the VA's mental disability rating.

Plaintiff is correct that the ALJ did not specifically assign weight to the 100 percent VA disability rating decision for his COPD. When the ALJ began his discussion stating that he reviewed the VA disability rating based on "mental conditions," he also included a citation to the VA disability rating for COPD, indicating that he reviewed and considered that rating as well. The court finds that the failure to specifically assign weight to the VA's COPD disability rating is harmless error because consistent with *Berry,* the ALJ specifically discussed the records concerning Plaintiff's COPD elsewhere in the record and set forth various reasons for finding Plaintiff was not as limited as he alleged. (*See* AR 25-27.)

Therefore, the court concludes that the ALJ did not err insofar as the VA disability ratings are concerned.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **DENYING** Plaintiff's motion (ECF No. 17), and **GRANTING** the Commissioner's cross-motion to affirm the final decision of the Social Security Administration (ECF No. 18).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

///

///

15

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment.

DATED: July 24, 2017.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE